UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


GARRY ALAN ULLAND,

      Plaintiff,

v.                                     Case No. 5:14cv162-RH-CJK

FRANK MCKEITHEN, Sheriff, Bay
County; MICHAEL D. CREWS, Secretary,
Department of Corrections; and "DOCTOR
LIPPMAN;"

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff's amended civil rights complaint

(doc. 27) filed under 42 U.S.C. § 1983.  The undersigned previously entered an order

(doc. 26) advising plaintiff he had failed to state a claim upon which relief could be

granted, pointing out the deficiencies in his complaint, and allowing him an

opportunity to clarify his allegations in an amended complaint.  Plaintiff filed an

amended complaint, but it suffers from many of the same deficiencies as his initial

complaint.  It is clear plaintiff cannot state a claim upon which relief can be granted

against these defendants.  The undersigned thus recommends the matter be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate with the Florida Department of Corrections ("DOC"), is

currently confined at Santa Rosa Correctional Institution Annex.  Plaintiff names

three defendants in his amended complaint: Frank McKeithen, Bay County Sheriff;

Michael D. Crews, Secretary of the Florida Department of Corrections ("FDOC")[1];

and "Doctor Lippman", Correctional-Physician.  Doc. 27, pg. 1.  He sues the

defendants in both their individual and official capacities and alleges violations of his

rights under the Eighth and Fourteenth Amendments to the United States Constitution

stemming from alleged inadequate medical treatment.[2]  Plaintiff also claims the

defendants "maintained a course or method of action or policy with a reckless

disregard for the health-care or human-life of the Plaintiff-detainee," as well as a

"lack of proper oversight, training, or proper supervision of staff, being the cause of

the reckless indangerment to health and life, with deliberate indifference to the

medical needs or preventive treatments the State of Florida is obligated to provide a

---

[1] Julie L. Jones is the current Secretary of the FDOC.

[2] Plaintiff invokes the due process and equal protection clauses of the Fourteenth Amendment.

Case No: 5:14cv162-RH-CJK

detainee, or prisoner whom can't provide for himself, due to being incarcerated against will and held."  Doc. 27 at pg. 5.

Plaintiff claims to have "discovered a boil on his right lower leg, above the ankle, inside portion of leg" that "became festered, then putrid and began to spread when lanced."  Doc. 27 at pg. 6.  According to plaintiff, "Cellulities-began!"  *Id.* Plaintiff alleges his condition was misdiagnosed, and he received inadequate medical treatment, resulting in "Full-blown, blood-born, Septicemia."  Doc. 27 at pg. 7.  "This lack of Prompt-Intervention of infectious-Staphylococus allowed to enter the Blood-Stream, traveled throughout the entire-Body, infecting every organ with Florid-Endotoxins: left untreated, by Hospitalized Treatments; (intervention-Intravenously), bacterial-overgrowth is assured till it reaches massive toxic-levels, overwhelming the bodies own autonomic-immune defense-system."  *Id.*  Plaintiff maintains "Sever-shock and death is likely; or Sever-Irreversable-damage to liver: (CIRRHOSIS); and other infected organs, are 'Imminent,' and like to occur, decompose!"  Doc. 27 at pg. 7.

He says he "Succumbed to Systemic shock or Anaphylactic Shock: Reaction to Drugs and Septicemia Infection."  Doc. 27 at pg. 9.  He "Screamed for help!"  *Id.* A nurse "Jump[ed] up and Down outside door, 'Claiming, She had no Cell-key and

Security Won't Respond and Can't be located.'" *Id.* He "awoke Sometime the earily

A.M. hours, weak/ disoriented; 'FLUSH: Extremely-Hot!'" *Id.* Plaintiff says he "told

Nurse McCallister and Sergeant Hunter about the reactions and the lack of Medical

Assistance" and "again, Sergeant Hunter Said, She did not want to get involved." *Id.*

"Plaintiff was thereafter examined by 'P.A. Kathie Norman,' (Physician's

Assistance), with 'R.N. David Sawyer.'" *Id.* He expressed worry about congestive

heart failure and, after examination, was told "'(Cellulites and Congestive-Heart-

Failure is the Least of Your Problems).'" *Id.* Plaintiff "'infered' Liver-Failure-

IMMINENT!" *Id.* "Stomach-Pains became excruciating; Torturous; after Surviving

Physical-Shock!" *Id.* Plaintiff consented to being transported to an outside hospital

for further examination, the "Results" of which "were Photo's of Blackish-Green and

Bright Red Necrotic-Stomach-Lining -Tissue." Doc. 27 at pg. 10.  Plaintiff claims

his "Medication, 'Colnadine,' was remove abruptly, with other Maintenance

Medication causing 'extreme Medical Reactions, (indangering-the inmates 'Life'."

Doc. 27 at pp. 10-11.

Plaintiff further avers he was "[t]aken into Custody by the Department of

Correction, 'Without proper Medical-Record-History, diagnostic Treatments, Prior

to Arrival," which constituted "deliberate indifference and Negligence on the Part of

Sheriff McKeithen."  Doc. 27 at pg. 11.  Plaintiff claims "McKeithen and Crew,

Sheriff and Secretary, both Provided Medical-Services, With Which they Contracted

to Provide the Care inmates obtain.  Breach their duty owed inmate, by negligently

Failing to Diagnose or timely Treat Conditions in their Custody."  *Id.*  Plaintiff

accuses them of "Medical Malpractice," "Medical Negligence," and "Simple

Negligence."  *Id.*  He alleges their "Delegation of it's Medical-care to Third-Party-

Provider; Private was Negligently Selected and Supervised."  *Id.*  "The Department's

Employees failure to adequately diagnose and Treat showed a wanton deliberate

indifference."  *Id.*  Plaintiff claims to have suffered retaliation, including denial of

medical treatment and confiscation of medication, by unknown individuals and

"Nurse-Seabrook's" based on the fact he had been "Issued" medication.[3]  Doc. 27 at

pg. 12.

Nevertheless, plaintiff was "sent to Butler (R.M.C.) for an Abdominal-Tap.

No-Sick-calls were allowed; only give a C.T.-Scan (done of 'Abdominal-Cavity),'

'No Tap,' or (Paracentesis) Performed, which he contends constituted "'deliberate

Indifference' to 'Putrefactive-State' of Bowels, and other organs in Abdominal

Cavity, exposed to 'Stagnated-Fluids'; Possible-'Morbific-State': the rupture of

---

[3] Despite the opportunity to amend, plaintiff has not added Nurse Seabrook to the list of defendants.

Bowels; Bladders; damaged-Lymphatic-Vessels; the indangerment by an Inveterate-Ascites; 'Reckless-Indangerment by indifference.'"  Doc. 27 at pp. 12-13.  Plaintiff maintains "Putrefactive state of organs will cause death, 'if left unattended:' Evacuating-Fluids may not be Considered Less-Hazardous, or more successful, but left to it's own Demise; is repulsively grotesque; Cruel and Unusual, and Excessive-distress."  Doc. 27 at pg. 13.  "Plaintiff has Yet to lose all hope in this 'Morbific-Matter': The 54-Months of Consumption and Pain, preceding this Civil-Rights-Action, more than Warrant's Plaintiff's Relief of Pains and 'Great Weakness,' Caused by this 'Long-Standing Ascites.'" *Id.*  "'Permanent-Injury' and damage to all-organs 'has already occurred, 'IRREVERSIBLE . . .'" *Id.*  "Plaintiff seeks a chance: Nature and Divine intervention can 'spontaneously-expel' the Perniciouis-Remains of 'Distemper' With Treatment!" *Id.*  "'Imminent Danger' is 'Real' and Pending-Death is 'Guaranteed' Without Evacuation of Fluids." *Id.*

Plaintiff seeks to hold the defendants liable for "negligently diagnosing, failing to diagnose or failing to adequately diagnose the Conditions from which [he] was Suffering, Specifically: Infection, Cellulities, Septicemia, Necrotizing Fascities, Ascites with Edema;" "negligently Treating, failing to Treat, or failing to adequately Treat the Conditions from which [he] was Suffering, Specifically: Infection,

Cellulities, Septicemia, Necrotizing-Fascities, Ascites with Edema, Skin Leasions;"

"failing to furnish Prompt Proper medical Care and Prompt Emergency -<u>Intravenous</u>-

Intervention, by <u>Hospitalization</u> of Plaintiff, <u>to avoid the onset</u> of Plaintiff's Illness,

and Condition, Specifically: Infection, Cellulities, <u>Septicemia</u>, Ascities, Edema,

Necrotizing Fascities and <u>Systemic-Shock</u>, <u>as Pretrial-Detainee;</u>" and "failing to

furnish Prompt and Proper Medical Care and Treatment of <u>State-Prisoner</u> for <u>Mental-</u>

<u>Health</u>; Encephalites and P.T.S.D.; for <u>Ascities and Edema</u>; by Evacuation of

Abdominal Fluid, (PARACENTESIS), <u>to prevent</u> the <u>PUTREFYING</u> of the <u>Internal-</u>

<u>Organs</u> within the Abdominal-Cavity; thereby <u>Killing Plaintiff</u> in allowing Long-

term, (<u>Inveterate</u>), Ascites to Exist." Doc. 27 at pg. 15. Plaintiff alleges defendants'

"Acts and Omissions were with <u>deliberate Indifference</u> and a <u>deliberate disregard for</u>

<u>Plaintiff's Life</u>!" *Id.* He seeks $10,000,000 in damages for "'Permanent-Injury,' and

for Shorter Life-Expectancy, with diminished-Capacity."[4] Doc. 27 at pg. 16.

---

[4] Plaintiff, serving a lengthy sentence for Second Degree Murder, complains about various aspects of his arrest, detention, and conviction. He requests no relief based on those complaints, however, and such relief would be barred in any event. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that before a plaintiff may proceed with a § 1983 action "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must prove that the conviction or sentence has been somehow invalidated"); *Nicholson v. Shafe*, 558 F.3d 1266, 1268 (11th Cir. 2009) (quotation omitted) (discussing *the Rooker-Feldman* doctrine, which precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments").

DISCUSSION

Title 28 U.S.C. § 1915 mandates that the district court dismiss a civil rights complaint if the complaint: 1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or 2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.   The court must read plaintiff's *pro se* allegations in a liberal fashion.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  The court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).  A complaint also is subject to dismissal for failure to state a claim when its allegations, on their face, show that an

Case No: 5:14cv162-RH-CJK

affirmative defense bars recovery on the claim. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle).

As set forth above, plaintiff filed his complaint under 42 U.S.C. § 1983, alleging violations of the "8th-Amendment through 14th-Amendments made-Applicable to the State for Detainee and State Prisoners" and "Substantive-Liberty-Interests-Rights and Equal-Protection-Rights." Doc. 27 at pg. 16. A viable claim under § 1983 requires plaintiff to establish two essential elements:

> 1.  the conduct complained of was committed by a person acting under color of state law; and
>
> 2.  this conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

I.      Individual Capacity Claims

    A.      Eighth Amendment

To prevail on an Eighth Amendment deprivation of medical care claim, a

prisoner must prove three elements.  First, he must demonstrate "an objectively

serious medical need" so grave that, "if left unattended, [it] poses a substantial risk

of serious harm."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal

quotation marks, alterations, and citations omitted).  "[A] serious medical need is . .

. one . . . diagnosed by a physician as mandating treatment or one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's attention."

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal marks omitted).  The

second element requires "a subjective intent by the public officials involved to use

the sufficiently serious deprivation in order to punish."  *Taylor*, 221 F.3d at 1258.  In

order to satisfy the final element of an Eighth Amendment claim, a plaintiff must

show that the official's deliberate indifference caused his injury.  *Taylor*, 221 F.3d at

1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating

the elements of an Eighth Amendment claim).

    "To show the required subjective intent to punish, a plaintiff must demonstrate

that the public official acted with an attitude of 'deliberate indifference.'"  *Taylor*,

221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 105).  "To be deliberately indifferent a prison official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1319-20 (11th Cir. 2005) (quotations omitted); *see Farmer*, 511 U.S. at 837 (noting that a defendant "must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference").  The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."  *Taylor*, 221 F.3d at 1258.  Indeed, simple negligence is not actionable under § 1983, and a plaintiff must allege "a conscious or callous indifference to a prisoner's rights."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or

appropriateness of the medical judgments that were made. *Harris*, 941 F.2d at 1507;

*see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished

opinion) ("Generally, an inmate who receives a medical diagnosis and care, but

desires a different diagnosis or treatment, cannot show deliberate indifference."). A

difference of opinion over matters of medical judgment does not give rise to a

constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033; *Murrell*

*v. Bennett*, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[5]  Delay in providing "diagnostic

care and medical treatment known to be necessary," however, can qualify as

deliberate indifference, *H.C. ex rel. Hewett v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir.

1986), if such delay is "tantamount to unnecessary and wanton infliction of pain."

*Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994).

"An inmate who complains that delay in medical treatment rose to a

constitutional violation must place verifying medical evidence in the record to

establish the detrimental effect of [the] delay in medical treatment." *Id.*  The Eleventh

Circuit has found cognizable deliberate indifference claims where prison officials

delayed treatment for life-threatening emergencies and in "situations where it is

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

apparent that delay would detrimentally exacerbate the medical problem." *Hill*, 40

F.3d at 1187. "[D]elay or even denial of medical treatment for superficial, nonserious

physical conditions does not constitute an Eighth Amendment violation." *Id*. at

1187-88.

Plaintiff has wholly failed to plead facts demonstrating deliberate indifference

to a serious medical condition by any of the defendants.  He alleges no action by

Sheriff McKeithen or Mr. Crews.  Hence, he must want to hold them liable in their

supervisory capacities.  "A supervising official who did not participate in the

allegedly wrongful actions can only be held liable under a theory of supervisory

liability if there is a causal connection between the supervising official's actions and

the alleged constitutional deprivation." *Id.* at 701.  "A plaintiff can establish the

required causal connection by documenting either (1) a history of widespread abuse

that would put a responsible supervisor on notice of the need to correct the alleged

deprivation, and the supervisor's failure to correct the problem; or (2) an official

custom or policy that led to the violation." *Id.*  Plaintiff has sufficiently alleged

neither.  He refers to a custom or policy, but only in general terms and not with regard

to any specific defendant.  The Eighth Amendment claims against Sheriff McKeithen

and Mr. Crews in their individual capacities therefore fail as a matter of law.

Case No: 5:14cv162-RH-CJK

With regard to Dr. Lippman, plaintiff alleges negligence, at best.  He says Dr.

Lippman failed to provide adequate treatment and refused to allow him to see another

doctor, opting instead to provide him with a "Soup of Antibiotics to Take."  Doc. 27

at pg. 8.  Plaintiff does not allege he was suffering from any serious medical condition

at the time he saw Dr. Lippman, much less than Dr. Lippman was aware of any such

condition.  In fact, he alleges Dr. Lippman took a leave of absence after prescribing

him antibiotics and before his condition allegedly became serious and thereafter

referred him to an outside physician.  Doc. 27 at pg. 8-10.  Hence, there is no

indication Dr. Lippman was aware of and disregarded an excessive risk to plaintiff's

health or safety and certainly no indication he did so in a manner that constituted

unnecessary and wanton infliction of pain.  Plaintiff's Eighth Amendment claim

against Dr. Lippman in his individual capacity thus also fails.  *See Farmer*, 511 U.S.

at 837; *Taylor*, 221 F.3d at 1258; *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir.

1995) (noting "whether governmental actors should have employed additional

diagnostic techniques or forms of treatment 'is a classic example of a matter for

medical judgment' and therefore not an appropriate basis for grounding liability

under the Eighth Amendment"); *Enriquez v. Kearney*, 694. F. Supp. 2d 1282, 1296

n.12 (S.D. Fla. 2010) ("[T]he propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action.").

B.      Fourteenth Amendment

Plaintiff likewise has failed to plead facts supporting a Fourteenth Amendment violation.  The Fourteenth Amendment provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To the extent plaintiff has invoked the due process clause, in *Sandin v. Conner*, 515 U.S. 472, 478, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the Supreme Court recognized only two instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns:  (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Plaintiff has alleged neither an alteration of his term of imprisonment nor a prison restraint, much less a restraint that imposed atypical and significant hardship on him. He therefore has failed to plead a viable due process claim.

Case 5:14-cv-00162-RH-CJK   Document 36   Filed 01/27/17   Page 16 of 19



Page 16 of  19

Viewing the matter as if plaintiff wants to raise an equal protection claim, he has not alleged he was treated differently from a similarly situated prisoner without a rational basis for the action. *See, e.g., Bumpus v. Watts*, 448 F. App'x 3, 5 (11th Cir. 2011) ("A plaintiff can establish a 'class of one' [equal protection] claim by showing that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"). Plaintiff's equal protection clam thus fails as well. As a result, plaintiff has not stated a claim for relief under § 1983 based on a Fourteenth Amendment violation.[6]

II.    Official Capacity Claims

To the extent plaintiff sues defendants in their official capacities, such claims are treated as suits against the governmental entities they represent – the county in the case of Sheriff McKeithen and the state in the case of Mr. Crews and Dr. Lippman. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985); *Faulkner*, 523 F. App'x at 701. As the Supreme Court explained, "a governmental entity is liable under § 1983 only when the entity itself is a '"moving

---

[6] Even if plaintiff had pled facts giving rise to a constitutional violation against the defendants in their individual capacities, any such claim at least arguably would be barred by the doctrine of quality immunity, which shields government officials from individual capacity suits against them for acts that do not violate clearly established constitutionals right of which a reasonable person would have known. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Conn v. Gabbert,* 526 U.S. 286, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999).

Case No: 5:14cv162-RH-CJK

force'" behind the deprivation; thus, in an official-capacity suit the entity's 'policy

or custom' must have played a part in the violation of federal law."  *Graham*, 473

U.S. at 166 (internal citations omitted); *see also Faulkner*, 523 F. App'x at 701 ("To

hold a county liable, a plaintiff must show that (1) his constitutional rights were

violated; (2) the county had a custom or policy that constituted deliberate indifference

to that constitutional right; and (3) that the policy or custom caused the violation.")

(internal marks omitted).

"A policy is a decision that is officially adopted by the [governmental entity],

or created by an official of such rank that he or she could be said to be acting on

behalf of the [governmental entity]. . . . A custom is a practice that is so settled and

permanent that it takes on the force of law."  *Wayne v. Jarvis*, 197 F.3d 1098, 1105

(11th Cir. 1999) (*quoting Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th

Cir. 1997)).  The 'policy or custom' requirement requires a plaintiff to identify either

(1) a particular officially promulgated . . . policy or (2) a particular unofficial custom

or practice . . . shown through the repeated acts of a final policymaker for the

[governmental entity].'" *Id.* (*quoting Glech v. Clayton Cnty.*, 335 F.3d 1326, 1329-30

(11th Cir. 2003)).  "With respect to the latter option, a [governmental entity]'s failure

to correct the constitutionally offensive actions of its employees can rise to the level

of a custom or policy 'if the [governmental entity] tacitly authorizes these actions or displays deliberate indifference' toward the misconduct." *Id.* (*quoting Griffin, supra*). "Because a [governmental entity] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs must show that the [governmental entity] has a custom or practice of permitting certain actions and that the [governmental entity's] custom or practice is the moving force behind the constitutional violation." *Id.* (*citing Glech*, 335 F.3d at 1330); *Holmes v. Kucynda*, 361 F.3d 1069, 1078 (11th Cir. 2003)).

Plaintiff has not identified any particular custom or policy of Bay County, the Bay County Jail, or the State of Florida, much less one that constituted or contributed in any way to deliberate indifference to his serious medical needs.  To the contrary, he describes only his own treatment, and, in great detail.  If anything – and to the extent he seeks to raise an equal protection claim –  he seems to be suggesting that other prisoners got better care, which would militate against a showing of an illegal custom or policy with regard to delivery of care.  Plaintiff's claims against the defendants in their official capacities thus fail.

Accordingly, it respectfully RECOMMENDED:

1.  That plaintiff's amended complaint (doc 27) be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

2.  That the clerk be directed to close the file.

DONE AND RECOMMENDED this 27th day of January, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**



NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No: 5:14cv162-RH-CJK